067488

ORIGINAL

FILED

DEC 1 8 2007

U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

| | |
|---|---|
| SOUTHEAST RESTORATION, INC.<br>dba AFTERDISASTER<br>1130 West Vandalia Road<br>Greensboro, North Carolina 27406-5606 | |
| Plaintiff, | 07-884 C |
| v. | No. 07- C<br>Judge |
| THE UNITED STATES, | |
| Defendant. | |

## COMPLAINT ON A CLAIM UNDER EXPRESS CONTRACTS

### NATURE OF THE ACTION

1. Plaintiff Southeast Restoration, Inc., dba AFTERDISASTER, 1130 West Vandalia Road, Greensboro, North Carolina 27406-5606 (AFTERDISASTER) files this Complaint in accordance with RCFC 7(a). Plaintiff AFTERDISASTER seeks declaratory relief and a money judgment under the Contract Disputes Act, 41 U.S.C. § 609-(a)(1), and under the Federal Courts Administration Act of 1992, 28 U.S.C. §§ 1491-

(a)(1), 1491(a)(2). Under 41 U.S.C. § 605(c)(2) Plaintiff AFTERDISASTER challenges the Deemed Denial of a certified Contract Disputes Act Claim for $3,510,602 under express Contracts between AFTERDISASTER and the South Central Veterans Affairs Health Care Network (VISN 16), United States Department of Veterans Affairs (Veterans Affairs), a certified Contract Disputes Act Claim arising under Purchase Orders Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218 for remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center, New Orleans, Louisiana.

2. Plaintiff AFTERDISASTER asserts: (1) that United States Department of Veterans Affairs is in breach of Veterans Affairs' obligations to AFTERDISASTER under the *Payment* Clause of these Purchase Orders; (2) that to the extent Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim is in excess of any funding limitations of these Purchase Orders, United States Department of Veterans Affairs is obligated to recompense AFTERDISASTER as on an implied-in-fact Contract for the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center,

*Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983); and (3) that the reasonable value of these remediation services is not less than the agreed-upon prices reflected in Plaintiff AFTERDISASTER's Invoices submitted under these Purchase Orders, *Id.*, 699 F.2d, at 1155-56.

3. Plaintiff AFTERDISASTER asks that the Court declare: (1) that the United States Department of Veterans Affairs is in material breach of its obligations to Plaintiff AFTERDISASTER under the *Payment* Clause of these Purchase Orders; (2) that the United States Department of Veterans Affairs is obligated to recompense Plaintiff AFTERDISASTER as on an implied-in-fact Contract for the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center; and (3) that the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center is not less than the agreed-upon prices reflected in Plaintiff AFTERDISASTER's Invoices to Defendants.

4. By reason of these breaches of these Purchase Orders Plaintiff AFTERDISASTER seeks also an Award of money damages, these money damages based on the

certified Contract Disputes Act Claim of May 16th, 2007 for remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center, and allowable interest under 41 U.S.C. § 611 on this sum Claimed by Plaintiff AFTERDISASTER.

## PARTIES

5. Plaintiff AFTERDISASTER is a for-profit North Carolina corporation started on December 1st, 1992. Plaintiff AFTERDISASTER is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., AFTERDISASTER is a private party and a corporation which at the time this Civil Action is filed has not more than 500 employees and whose net worth does not exceed $7,000,000.

6. Plaintiff AFTERDISASTER is the Awardee of Purchase Orders Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218, and thus a proper "Contractor" under the Contract Disputes Act, 41 U.S.C. § 601(4). These Purchase Orders became effective for Plaintiff AFTERDISASTER on or about October 3rd, 2005 when Randy Braley, a United States Department of Veterans Affairs Contracting Officer then operating from a portable office at the former Veterans Affairs Medical Center, 1601 Perdido Street, New Orleans, Louisiana 70112-1262 gave

Plaintiff AFTERDISASTER verbal authorization to proceed with remediation services. Plaintiff AFTERDISASTER received the numbers of these Purchase Orders on October 28th, 2005 from Maria Pizzaro, another United States Department of Veterans Affairs Contracting Officer. Plaintiff AFTERDISASTER did not receive copies of these Purchase Orders until after Plaintiff filed its certified Contract Disputes Act Claim. Since submission of the certified Contract Disputes Act Claim on May 16th, 2007 to Brenda Stewart, Chief, Logistics Office, VISN 16, Plaintiff AFTERDISASTER has communicated with Gerald Grahe, a United States Department of Veterans Affairs official at the Office of Contract Review for United States Department of Veterans Affairs' Office of Inspector General.

7. United States Department of Veterans Affairs is an Executive Department of the United States. 5 U.S.C. § 101. United States Department of Veterans Affairs has authority to Award purchases and Contracts for property and services. 41 U.S.C. § 252. United States Department of Veterans Affairs is a proper "Executive Agency" under the Contract Disputes Act, 41 U.S.C. § 601(2).

8. These Purchase Orders are express services Contracts requiring the delivery of non-personal remediation services at the former United States Department of Veter-

ans Affairs Medical Center, New Orleans, Louisiana. These Purchase Orders are express Contracts entered into by an Executive Agency for the procurement of services, and thus Executive Agency Contracts to which the Contract Disputes Act applies, 41 U.S.C. § 602(a)(1). Defendants Randy Braley, Maria Pizzaro, Brenda Stewart, and Gerald Grahe and the United States Department of Veterans Affairs are hereinafter referred to, collectively, as "the Defendants."

## JURISDICTION

9. This Court has jurisdiction under 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 1491(a)-(2), and 41 U.S.C. § 609(a)(1). The Deemed Denial by the United States Department of Veterans Affairs concerning Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007 for payment of $3,510,602 for remediation services delivered by Plaintiff AFTERDISASTER under Purchase Orders Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218 is sufficiently final for the purposes of the Contract Disputes Act, 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); is sufficiently final under 28 U.S.C. § 1491(a)(1) for this Civil Action seeking a money judgment (It

is a "claim . . . founded . . . upon any express . . . contract with the United States."); and is sufficiently final under 28 U.S.C. § 1491(a)(2) for this Civil Action seeking declaratory relief because this Civil Action arises, literally, from "a nonmonetary [dispute] on which a decision of the contracting officer has been issued . . . ." *Record Steel and Construction, Inc. v. United States*, 62 Fed. Cl. 508, 520 (2004).

10. This Civil Action is timely filed. Plaintiff AFTERDISASTER submitted a certified Contract Disputes Act Claim to Brenda Stewart on May 16th, 2007 and the United States Department of Veterans Affairs did not, on or before July 16th, 2007, 41 U.S.C. § 605(c)(2), either issue a Decision on this certified Contract Disputes Act Claim else notify Plaintiff AFTERDISASTER of the time within which a Decision would be issued. *Patton v. United States*, 74 Fed. Cl. 110, 115-16 (2006). This Civil Action is filed within one year from the date of this Deemed Denial, 41 U.S.C. § 609-(a)(3).

## AVERMENTS

Veterans Affairs Medical Center Requirements.

11. Hurricane Katrina came ashore on the southeast coast of Louisiana in the morning of August 29th, 2005. The damage inflicted by Hurricane Katrina to the

former United States Department of Veterans Affairs Medical Center, 1601 Perdido Street, New Orleans, Louisiana 70112-1262 is the largest natural disaster ever sustained by the United States Department of Veterans Affairs.

12. The Basement of the former United States Department of Veterans Affairs Medical Center flooded after Hurricane Katrina came ashore. CCS Industrial Sales, Incorporated, 3062 Highway 43 North, Picayune, Mississippi 39466-7848 (CCS Industrial Sales) was contacted immediately by Phil Boogaerts, a Facilities Engineer at the former United States Department of Veterans Affairs Medical Center, and he asked CCS Industrial Sales to inspect and provide a firm fixed-price quotation for removal of water from the Basement of the former United States Department of Veterans Affairs Medical Center. The quotation was issued, reviewed, and Purchase Order Number V502P-2477 in the amount of $165,000 was issued to CCS Industrial Sales on September 11th, 2005. Due to the nature of the work involved, the specific equipment required, and the lack of manpower and equipment on the Gulf Coast, CCS Industrial Sales subcontracted these remediation services to Plaintiff AFTER-DISASTER. The remediation services were completed on September 22nd, 2005, invoiced, and then payment was received.

13. Randy Braley of the South Central Veterans Affairs Health Care Network thereafter arrived at the former United States Department of Veterans Affairs Medical Center and set up a meeting with Plaintiff AFTERDISASTER in a portable onsite office. The purpose of the meeting was to ask if Plaintiff AFTERDISASTER could become a prime Contractor involving clean-up of the effects of Hurricane Katrina, including the Basement, Sub-basement, and other services "as needed" on Floors 1 through 10 of the former United States Department of Veterans Affairs Medical Center. Randy Braley said that he would write an initial Purchase Order and then issue subsequent Purchase Orders to keep the work progressing. Randy Braley said that he was in complete charge of all procurement for clean-up of the former United States Department of Veterans Affairs Medical Center, and that because of the emergency resulting from Hurricane Katrina he could issue Purchase Orders in large amounts to a prime Contractor which could timely mobilize labor and equipment at the former United States Department of Veterans Affairs Medical Center.

14. Randy Braley gave Plaintiff AFTERDISASTER verbal authorization to proceed. Randy Braley told Plaintiff AFTERDISASTER that United States Department of Veterans Affairs would monitor progress and would keep writing successor Pur-

chase Orders as needed to keep Plaintiff AFTERDISASTER on the job. Plaintiff AFTERDISASTER was directed by Veterans Affairs to "stay the course" and to "get the place cleaned up."

15. On October 28th, 2005 Maria Pizzaro, a United States Department of Veterans Affairs Contracting Officer, gave Plaintiff AFTERDISASTER Purchase Orders Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218 together with a promise that complete copies of these Purchase Orders would be provided to Plaintiff AFTERDISASTER within two weeks of that date. In fact, physical copies of these Purchase Orders were not provided to Plaintiff AFTERDISASTER until after Plaintiff filed its certified Contract Disputes Act Claim on May 16th, 2007.

16. On November 9th, 2005 Plaintiff AFTERDISASTER renewed its request for complete copies of the Purchase Orders. United States Department of Veterans Affairs' response to this request was improper and unlawful threats by Randy Braley and Maria Pizzaro. A contemporaneous account by an official of Plaintiff AFTERDISASTER of these improper and unlawful threats by United States Department of Veterans Affairs Contracting Officers is Attachment 1 to this Complaint.

Contract Provisions.

17. Subparagraph (d) *Disputes* of the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS Clause required to be incorporated in Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218 makes these Purchase Orders subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, and this *Disputes* Clause provides that "[f]ailure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal, or action arising under or related to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes . . . ." This *Disputes* Clause requires that Plaintiff AFTERDISASTER "proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract."

18. The DISPUTES Clause of these Purchase Orders defines as a "Claim" subject to this Clause "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." Likewise this DISPUTES Clause provides that an Invoice not in dispute when submitted "may be converted to a claim under the Act, by complying with the

submission and certification requirements of this clause, if it is disputed as to either liability or amount or is not acted upon in reasonable time."

19. Subparagraph (i) *Payment* of the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS Clause required to be incorporated in these Purchase Orders requires that "[p]ayment shall be made for items accepted by the Government . . . ," and that payment will be made "in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR Part 1315."

Defendants' Breaches.

20. Plaintiff AFTERDISASTER mobilized on-site during the period October 7th, 2005 through March 4th, 2006. Plaintiff AFTERDISASTER mobilized on-site with an initial 65 to 75 people, and in addition to germicidal fogging and spraying, Plaintiff AFTERDISASTER removed refrigerators by physically lugging them down many flights of interior stairs, provided air circulation and dehumidification, and provided other remediation services on Floors Numbers 1 through 10 of the former United States Department of Veterans Affairs Medical Center.

21. United States Department of Veterans Affairs by then had retained the services of another private party Contractor to monitor remediation Contractors. United

States Department of Veterans Affairs Security personnel were on-site at the former Veterans Affairs Medical Center to maintain order and to establish logs of everyone's comings and goings. Remediation services were performed in terrible conditions and were delivered with minimal supervision from United States Department of Veterans Affairs. Plaintiff AFTERDISASTER documented its deliveries of remediation services with Daily Work Plans and Production Reports. Daily Work Plans were hand-delivered every day (including Saturday, Sundays, and holidays) by Plaintiff AFTERDISASTER to the on-site United States Department of Veterans Affairs Contracting Officer's Technical Representative and to the private party Contractor retained by the United States Department of Veterans Affairs engaged to monitor the remediation Contractors.

28. Plaintiff AFTERDISASTER submitted to Brenda Stewart on May 16th, 2007 a certified $3,510,602 Contract Disputes Act Claim for remediation services delivered by Plaintiff AFTERDISASTER under Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218.

29. Defendants did not on or before July 16th, 2007, as required by 41 U.S.C. § 605(c)(2), either issue a Decision on the certified Contract Disputes Act Claim of

January 31st, 2007, else notify Plaintiff AFTERDISASTER of the time within which a Decision would be issued.

30. On June 8th, 2007 the United States Department of Veterans Affairs' Office of Inspector General asked Plaintiff AFTERDISASTER for books and records supporting the certified Contract Disputes Act Claim that had been filed by Plaintiff AFTERDISASTER. Attachment 2. In fact Plaintiff AFTERDISASTER had already submitted daily reports to the United States Department of Veterans Affairs when Plaintiff AFTERDISASTER was on-site in New Orleans from October 2005 through March 2006. And the Federal employees of the United States Department of Veterans Affairs to whom Plaintiff AFTERDISASTER submitted these on-site daily reports remain on the rolls of the United States Department of Veterans Affairs.

31. On June 25th, 2007 Plaintiff AFTERDISASTER notified the United States Department of Veterans Affairs' Office of Inspector General that copies of its books and records were available at the Office of Plaintiff AFTERDISASTER's outside counsel. And the Office of Plaintiff AFTERDISASTER's outside counsel is just seven blocks from the Office of the United States Department of Veterans Affairs' Office of Inspector General.

32. In response to telephone calls from the United States Department of Veterans Affairs' Office of Inspector General on July 2nd, 2007 Plaintiff AFTERDISASTER submitted a compendium of Plaintiff AFTERDISASTER's books and records. This document compendium was received by the United States Department of Veterans Affairs' Office of Inspector General on July 6th, 2007.

33. Since July 18th, 2007 there have been electronic mail exchanges concerning the certified Contract Disputes Act Claim of May 16th, 2007 between the United States Department of Veterans Affairs' Office of Inspector General and Plaintiff AFTER-DISASTER. There have been no meetings here in Washington or elsewhere between the United States Department of Veterans Affairs' Office of Inspector General and Plaintiff AFTERDISASTER.

34. On December 10th, 2007 Plaintiff AFTERDISASTER's outside counsel asked the United States Department of Veterans Affairs' house counsel for the status of the review of Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim. Attachment 3. The United States Department of Veterans Affairs' house counsel responded later that day that there was an "emergency" in the Midwest, presumably because of ice storms then occurring, and that the United States Department of Veter-

ans Affairs would "get back with you as soon as possible." Attachment 4. Nothing has been heard since. The United States Department of Veterans Affairs' Office of Inspector General has provided neither an account of its progress nor a date by which the review will be complete. A VISN 16 Contracting Officer has yet to make a Decision on Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007.

## COUNT I
## DEFENDANTS ARE IN MATERIAL BREACH OF THEIR OBLIGATIONS UNDER THE *PAYMENT* CLAUSE.

35. Plaintiff AFTERDISASTER incorporates and re-alleges paragraphs numbers 1. through 34. hereinabove as if fully set forth herein.

36. Defendants are in material breach of their obligations to Plaintiff AFTERDISASTER under the *Payment* Clause of Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218 because the certified Contract Disputes Act Claim of May 16th, 2007 remains unpaid.

COUNT II
PLAINTIFF IS ENTITLED TO RECOMPENSE FOR THE
REASONABLE VALUE OF THE REMEDIATION SERVICES
DELIVERED AT THE FORMER VETERANS AFFAIRS MEDICAL CENTER.

37. Plaintiff AFTERDISASTER incorporates and re-alleges paragraphs numbers 1. through 34. hereinabove as if fully set forth herein.

38. To the extent Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007 is in excess of any funding limitations of Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218, the United States Department of Veterans Affairs is obligated to recompense Plaintiff AFTERDISASTER as on an implied-in-fact Contract for the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983).

COUNT III
THE REASONABLE VALUE OF THE REMEDIATION SERVICES
DELIVERED AT THE FORMER VETERANS AFFAIRS MEDICAL CENTER IS NOT LESS
THAN THE AGREED-UPON PRICES REFLECTED IN THE INVOICES.

39. Plaintiff AFTERDISASTER incorporates and re-alleges paragraphs numbers 1. through 34. hereinabove as if fully set forth herein.

40. The reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center is not less than the agreed-upon prices reflected in Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1155-56 (Fed. Cir. 1983).

COUNT IV
PLAINTIFF IS ENTITLED TO A MONEY JUDGMENT
NOT LESS THAN $3,510,602.

41. Plaintiff AFTERDISASTER incorporates and re-alleges paragraphs numbers 1. through 34. hereinabove as if fully set forth herein.

42. By reason of Defendants' material breaches of Defendants' obligations to Plaintiff AFTERDISASTER under the *Payment* Clause of Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218, and by reason of Defendants' obligations to recompense Plaintiff AFTERDISASTER as on an implied-in-fact Contract for the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center, Plaintiff AFTERDISASTER is due a Money Judgment not less than $3,510,602.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AFTERDISASTER respectfully requests:

(a) that the Court declares that Defendants are in material breach of their obligations to Plaintiff AFTERDISASTER under the *Payment* Clause of Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218;

(b) that the Court declares that to the extent Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007 is in excess of any funding limitations of Purchase Order Numbers 586-C6-0194, 586-C6-0195, 586-C6-0204, 586-C6-0216 and 586-C6-0218, the United States Department of Veterans Affairs is obligated to recompense Plaintiff AFTERDISASTER as on an implied-in-fact Contract for the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983);

(c) that the Court declares that the reasonable value of the remediation services delivered by Plaintiff AFTERDISASTER at the former United States Department of Veterans Affairs Medical Center is not less than the agreed-upon prices reflected in

Plaintiff AFTERDISASTER's certified Contract Disputes Act Claim of May 16th, 2007, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1155-56 (Fed. Cir. 1983);

(d) that the Court Awards Plaintiff AFTERDISASTER a Money Judgment not less than $3,510,602 and allowable interest under 41 U.S.C. § 611; and

(e) that the Court grants Plaintiff AFTERDISASTER such other and further relief as may be just and proper.

Respectfully submitted,

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500;
Virginia State Bar Number 03135
December 19th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiff,
Southeast Restoration, Incorporated
dba AFTERDISASTER.

# ATTACHMENT 1

AFTERDISASTER®
THE WATER AND FIRE EMERGENCY TEAM

November 9, 2005

The purpose of this memo is to document a meeting that I had with Randy Braley and Maria Pizzaro on November 9, 2005 at approximately 9AM in the circular drive in front of the VA Medical Center.

I had met with our attorneys on November 8, 2005 to learn how we should proceed with billing and collecting for the work we were doing at the VA Medical Center. When I explained that we had no contract and were performing services on Verbal Purchase Orders our attorneys became quite alarmed. They recommended that we obtain written documentation of our authorization to perform work.

Before the morning meeting I approached Maria Pizzaro and told her I would like to meet at her convenience to talk about payment and purchase orders. She replied that she would see if she had time and conveyed the attitude that she was not going to be available.

After the morning meeting I approached Maria Pizzaro and Randy Braley about this issue. I asked for written purchase orders and explained our attorneys' concerns.

Evidently during the course of my comments Maria Pizzaro felt that I had implied that we were considering pulling off of the job.

Following is what I was told:

By Maria Pizzaro:

"Your attorneys are not familiar with the FAR's." If they were they would know that this is not a problem.

She stated that the FAR's allow verbal PO's in an emergency situation such as this and accordingly this situation is within the VA's authority. She indicated that we should not be concerned about the absence of written purchase orders.

She assured me that written purchase orders would be available.

She told me that she was just waiting for us to pull off the job because if we did we would be responsible for paying someone else to finish it and be subject to monetary penalties. She indicated that this would be acceptable to them as they would get the job done either way.

P.O. Box 10393 • Greensboro, North Carolina 27404
Phone: 336-294-4321 • Toll Free: 1-800-948-0242 • Fax: 336-855-1144
E-mail: help@afterdisaster.com • Web: www.afterdisaster.com

By Randy Braley:

"We can get another contractor in here to take your place."

"I am authorized to issue verbal purchase orders up to $25,000,000 in a situation like as this."

"We expect the contractors we deal with to have the wherewithal to make the necessary investment in keeping the job going."

I assured them that we were not contemplating walking away and that we wanted the work.

I must have really upset Randy because he called Lee King and told him I had almost gotten us thrown off of the job. He also said that I "demanded" written purchase orders from him and that he did not like anyone demanding anything from him.

I was very threatened by this conversation and concluded that this would be the last time I would challenge either of them. The consequences were too high; lose the job and be forced to pay to another company to complete it. I was also concerned that I had jeopardized my job with AFTERDISASTER by upsetting the individuals we were working for. It was clear to me that we would lose the job if we didn't do things exactly the way they wanted them done. It was also clear to me that we would have to finish the job no matter what.

I abandoned further counsel from our attorney's feeling that it could only make things worse.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 11-9-05.

Zack Howerton III (signature) 11-9-05 Date

Zack Howerton, AFTERDISASTER

# ATTACHMENT 2

DEPARTMENT OF VETERANS AFFAIRS
**Office of Inspector General**
**Washington, DC 20420**

June 8, 2007

Mr. Lee King, President
Southeast Restoration, Inc.
1130 West Vandalia Road
Greensboro, North Carolina 27404-0393

Dear Mr. King:

At the request of the Department of Veterans Affairs, Veterans Integrated Service Network (VISN) 16 contracting representatives, we are conducting an audit of invoices submitted for cleanup of the former Veterans Affairs Medical Center New Orleans, located at 1601 Perdido Street, New Orleans. Southeast Restoration Inc. dba AfterDisaster (AfterDisaster) initially served as a subcontractor and later as a prime contractor during the cleanup period.

The scope of our audit includes the following AfterDisaster invoices submitted to CCS: 101005, 101805, 102505, 110105, 110805, 111505, 112205, 120605, 121305, 122005, 122705, 13106, 20706, 21406, 10306, 11006, 11706, and 12406. The following purchase orders are also included: C60194, C60195, C60204, C60216, and C60218.

We have reviewed documentation provided by VISN 16 and determined that we need the following items for all effort charged to VA purchase orders, regardless of prime or subcontractor status:

1. Timesheets supporting all labor hours charged.
2. Proposals or cost estimates submitted in support of issued purchase orders.
3. Correspondence with VA personnel referring to agreement to perform certain tasks and other pertinent discussions.

Based on our review of the documentation you provide, we may need to request additional data and/or schedule a site visit. Please express mail requested documents to the following address:

Gerald T. Grahe
Office of Inspector General
Department of Veterans Affairs
Office of Contract Review (55)
801 I Street NW, Room 1171
Washington, DC 20001

If you have any questions, please contact me at (202) 565-8255. Thank you in advance for your cooperation.

Sincerely,

GERALD T. GRAHE
Deputy Director, Office of Contract Review (55)

# ATTACHMENT 3

**Cyrus E. Phillips, IV**

**From:** Cyrus E. Phillips, IV [lawyer@procurement-lawyer.com]
**Sent:** Monday, December 10, 2007 12:33 PM
**To:** Rosenberg, Merilee
**Cc:** Armando Rodriguez-Feo, Esq.
**Subject:** FW: Update-Monday, December 10, 2007

| Tracking: | Recipient | Read |
|---|---|---|
| | Rosenberg, Merilee | Read: 12/10/2007 1:07 PM |
| | Armando Rodriguez-Feo, Esq. | |

Could we please have the status on this remaining Claim, a Claim on which we have yet to file at the U.S. Court of Federal Claims?

Thanks.

Cy Phillips

---

**From:** Lee King [mailto:Lee.King@AFTERDISASTER.COM]
**Sent:** Monday, December 10, 2007 11:31 AM
**To:** 'Grahe, Gerald (OIG)'
**Cc:** lawyer@procurement-lawyer.com
**Subject:** Update-Monday, December 10, 2007

Mr. Grahe,

Just checking to see if you have any more questions or concerns about the remaining outstanding invoices.

We remain available to answer your questions and provide you with clarification.

Thank you.

Lee King

cc: Cyrus Phillips

☐

---

Lee King
AFTERDISASTER
P.O. Box 10393
Greensboro, NC 27404
Office (336) 294-4321
EFax (336) 464-2644
Office Fax (336) 855-1144
Email Lee.King@AFTERDISASTER.com

***AFTERDISASTER®***
**The Water & Fire Emergency Team**

Serving the Eastern United States

*The information contained in this electronic document from AFTERDISASTER is privileged and confidential information intended for the recipient for whom it was intended. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the person listed above and discard the original.*

# ATTACHMENT 4

**Cyrus E. Phillips, IV**

**From:** Cyrus E. Phillips, IV [lawyer@procurement-lawyer.com]

**Sent:** Monday, December 10, 2007 1:35 PM

**To:** Lee.King@AFTERDISASTER.com; Zack Howerton (Zack.Howerton@AFTERDISASTER.com)

**Subject:** FW: Update-Monday, December 10, 2007

---

**From:** Rosenberg, Merilee [mailto:merilee.rosenberg@va.gov]
**Sent:** Monday, December 10, 2007 1:22 PM
**To:** lawyer@procurement-lawyer.com
**Cc:** Armando Rodriguez-Feo, Esq.
**Subject:** RE: Update-Monday, December 10, 2007

Cy,

We have an emergency in Midwest. Patients coming to clinics that have shut down. I will get back with you as soon as possible

Merilee