# ATTACHMENT 4

April 24, 2008

**USPS Certified Mail ______________**

Southeast Restoration, Inc.
dba AFTERDISASTER
P.O. Box 10393
Greensboro, NC 27404

Subj: Claim for Remediation Services of Floors 1-10 due to Hurricane Katrina performed at VAMC New Orleans -Purchase Order # 586-C60194, 586-C60195, 586-C60204, 586-C60216, and 586-C60218.

Dear Mr. King:

I am in receipt of the subject claim in the total amount of $3,510,601.78 that is dated May 16, 2007 and was received by the Contracting Officer on or about May 17, 2007. In accordance with the guidelines of FAR 33.211 (a) (4), the Final Decision relative to the aforementioned claim is as follows:

**Description of the claim/dispute**

In the subject claim Southeast Restoration, Inc. dba AFTERDISASTER (AD) seeks additional payment for services rendered during the remediation services performed after Hurricane Katrina at the VAMC New Orleans under the terms of the purchase orders numbered 586-C60194, 586-C60195, 586-C60204, 586-C60216, and 586-C60218. AD alleges that costs in excess of the funding limitations on the subject Purchase Orders should be reimbursed as part of an implied-in fact contract for the value of services performed. AD's claim for the above purchase orders are provided as follows:

| Invoice # | P. O. # | Description | Obligated PO Amount | Original Invoice | Additional Amount Claimed |
|---|---|---|---|---|---|
| 31306 | 586-C60194 | Site Cleanup & Power Wash | $ 75,000.00 | $ 74,971.07 | $ 97,209.50 |
| | | | PAID 6-13-06 | $ 74,250.00 | |
| 51007 | 586-C60195 | Final cleaning of floors 1 through 10 | $1,500,000.00 | $1,385,499.32 | -0- |
| 22806 | 586-C60204 | Air Scrubbers, Filters, & Set up | $ 750,000.00 | $ 749,982.83 | $1,069,573.46 |
| 31306 | 586-C60216 | Tree/Vegetation Removal | $ 75,000.00 | $ 74,921.55 | $ 13,583.00 |
| 31006 | 586-C60218 | Power wash floor surface of parking garage | $ 85,000.00 | $ 84,704.91 | $ 34,406.14 |
| | | | $2,485,000.00 | $2,295,829.68 | $1,214,772.10 |

On May16, 2007, AD filed a complaint with the Court of Federal Claims seeking a declaratory judgment and a judgment under the Contract Disputes Act (CDA) for $3,510,601.78 as presented in the five invoices: 31306, 51007, 22806, 31306, & 31006. The Court of Federal Claims has granted a Motion for a Stay of Proceedings and Remand to allow the Contracting officer to issue a final decision on these AD claims. This decision is in response to that order.

**Contracting Officer's Statement of the relevant facts**

This claim arises from the damage brought about by the winds and rain that infiltrated the VA Medical Center, New Orleans in the wake of Hurricane Katrina in August 2005. The entire medical center was devastated; submerged, and fungus infected. Patients had to be evacuated. In August 2005, VISN 16 contracting officials hired contractors to perform clean-up and remediation services at VAMC New Orleans.

The issues in this claim basically involve work performed under five Purchase Orders, Purchase Orders 586-C60194, 586-C60195, 586-C60204, 586-C60216, and 586-C60218. PO 586-C60194 was for power washing exterior surfaces. PO 586-C60195 was for cleaning of floors 1 through 10. PO 586-C60204 was for air scrubbers for floors 1 through 10. PO 586-C60216 was for tree and vegetation removal. Lastly, PO 586-C60218 was for washing parking garage.

Purchase Orders 586-C60194, 586-C60195 586-C60204, 586-C60216, and 586-C60218 were issued as estimated orders. Most of these orders expressly prohibited the contractor from exceeding the amount on the PO without prior approval from the Contracting Officer. The Resident Engineer and COTR have both stated that they informed AD that all of these purchase orders were to be considered "not to exceed" orders. They also told AD to notify them when billings reached 80 percent of the approved amount. According to Contracting Officer Maria Pizarro, all of these Purchase Orders were sent to AD via mail. AD alleges that these Purchase Orders were never received, only an email from Maria Pizarro containing Purchase Order numbers along with assurance that hard copies would be provided within two weeks. The amount claimed for all but one of the Purchase Orders exceeds the estimated authorized amount.

AMI Environmental was hired to monitor various contractors' labors during the remediation process. Daily Quality Reports were provided an independent assessment of work performed, performance issues, environmental issues and record of discussions. AMI Environmental had no authority to direct other contractors on site at the VAMC New Orleans or any authority to bind the government.

AD did not submit billings in a timely manner. The lag time between work performed and invoicing for work performed indicates that the contractor failed to notify the VA when the billings had reached 80 percent of the approved amount of the purchase order. This dispute could have been alleviated if timely invoicing had been accomplished.

**Submission of claim**

In April, 2007, AD submitted invoices and claims to Brenda Stewart, for the five subject Purchase Orders. In anticipation of litigation the Contracting Officer submitted AD's claims to the VA Office of the Inspector General (OIG) for a detailed audit. The OIG performed a financial audit of the claim. This audit did not contain a legal evaluation of entitlement under the contracts or purchase orders.

On May 16, 2007, AD filed a complaint with the Court of Federal Claims seeking declaratory relief and a judgment under the Contract Disputes Act for $3,510,601.78 for the five invoices.

**Contracting officer analysis:**

**Power wash of exterior stained surfaces and removal of damaged trees and shrubs** - PO 586-C60194

I have carefully reviewed the facts and circumstances surrounding the power washing of the exterior stained surfaces and the removal of damaged trees and shrubs (PO C60194) at the VAMC New Orleans in the aftermath of Hurricane Katrina. In addition, the OIG has audited this claim. I have carefully considered these results.

There was an express contract governing this work. Since there was an express contract/purchase order governing this work, I find that there was no implied-in-fact contract for this work.

On October 27, 2005, Maria Pizarro issued PO 586-C60194 which was an estimated order in the amount of $75,000. AD admits that they were aware of the dollar value of the Purchase Order. According to Maria Pizarro this Purchase Order was mailed to AD. In addition, both the Resident Engineer and COTR informed AD that all the subject purchase orders were written as "not to exceed" orders. AD was also informed by both the Resident Engineer and the COTR that when billings reached 80 percent of the approved amount, they would need to notify the VA.

AD began power washing of the exterior on or about October 13, 2005 and continued until November 10, 2005. The original invoice for this work, invoice 31306, was dated May 16, 2006, and was for the amount of $74,971.07. The invoice was accompanied by a cover letter that stated that AD would be submitting "a Claim for services rendered in excess of the ceiling for this Purchase Order". Payment in the amount of $74,250 was made on June 13, 2006. Subsequently AD submitted an additional claim of $97, 209.50 for this work.

I find that there was an express contract/purchase order for this work for the amount of $75,000.00. I further find that no person, with contract authority to bind the government, ever modified this contract/purchase order to increase the amount authorized. AD was aware of this purchase order amount and was aware that this was a "ceiling" price. AD refers the ceiling on

the Purchase order in their invoice. Furthermore AD was specifically told by both the Resident Engineer and the COTR that they were not authorized to exceed this amount. Despite the fact that AD was specifically instructed to notify the VA when they reached 80% of the amount of the P.O., they failed to do so. Although the OIG report only questions $24,871.77 of the claimed costs, I find that AD was not authorized to perform any work in excess of $75,000.00. AD has already been paid an amount of $74,250.00 for this work under this Purchase Order. Therefore I find that a balance of $750.00 is due AD on the Purchase Order 586-C60194.

Of the additional $97,209.50 claimed for work covered under Purchase Order 586-C60194, I find that the contractor is owed a total of $750.00.

**Final cleaning of floors 1 through 10 -** PO 586-C60195

I have carefully reviewed the facts and circumstances surrounding the final cleaning of floors 1 through 10 (PO C60195) at the VAMC New Orleans in the aftermath of Hurricane Katrina. In addition, the OIG has audited this claim. I have carefully considered these results.

There was an express contract governing this work. Since there was an express contract/purchase order governing this work, I find that there was no implied-in-fact contract for this work.

On October 27, 2005, Maria Pizarro issued PO 586-C60195 which states it is an estimated order in the amount of $1,500,000. AMI provided VA with written procedures to be utilized for cleaning and final clearance of the facility which were provided to AD for direction on how to proceed with work. The original invoice 51007 for this work requested the amount of $1,385,499.32 which was broken down into three parts: Floor 10G - $654,415.68; Floor 9G - $466,498.38; and Floor 1G, Emergency Room, patios - $264,585.26.

The OIG audit revealed an error in the duct cleaning price of $0.30 additional per square foot. AD's invoice indicates that their prices are based upon the same price that another contractor charged the VA in Quad H. However AD has miscalculated the "per square foot price" that VA was charged in Quad H. The actual square foot price for Quad H was $4.60 SF, not $4.90 SF. The total of Quad H is 24, 021 SF from scaled drawings and VA paid a total of $110,490 for Quad H ($110,490 / 24,021 = $4.60SF). The questioned cost under PO 586-60195 is $22,204.13 plus overhead and profit totaling $26,644.95..

After review by OIG for HEPA vacuuming and damp wipe with germicide, it was determined that VA was overcharged for certain door, lights, registers, baseboards, chair rail, windows and cabinets that were excluded from wall and/or ceiling dimensions. Review of each room revealed they should have been deducted from wall and/or ceiling dimensions. The total overcharged was $14,959.15 plus overhead and profit totaling $17,950.99.

I concur with the OIG report on the $44,595.94 of questioned costs. Therefore, the $1,385,499.32 claimed under PO 586-C60195, I find that the contractor is owed a total of $1,340,903.38.

**Air Scrubbers on Floors 1 through 10 -** PO 586-C60204

I have carefully reviewed the facts and circumstances surrounding the HEPA air scrubbing of floors 1 through 10 (PO C60204) at the VAMC New Orleans in the aftermath of Hurricane Katrina. In addition, the OIG has audited this claim. I have carefully considered these results.

There was an express contract governing this work. Since there was an express contract/purchase order governing this work, I find that there was no implied-in-fact contract for this work

On October 27, 2005, Maria Pizarro issued PO 586-C60204 which states it is an estimated order in the amount of $750,000. AD's original invoice 22806, dated February 19, 2007, was for the amount of $749,982.83 for services November 8, 2005 through December 9, 2005. AD has subsequently submitted an additional claim in the amount of $1,069,573.46 for services from December 10, 2005 through January 13, 2006.

Purchase order 586-C60204 clearly states "to provide all labor and material to place and maintain HEPA equipment at VAMC New Orleans, LA to scrub air on Floors 1 through 10. HEPA equipment will remain in operation until building environment has been cleared. Units shall be place to accomplish one (1) air exchange per hour." Also, purchase order states "contractor shall not exceed the estimated amount on this purchase order without written approval from the Contracting Officer. The Government will not be obligated for work performed that exceeds the amount on the face of this PO with a modification".

AD provided COTR with an update on December 8, 2005 stating that "AD has approximately 102 air scrubbers in the basement (under the basement cleanup purchase order through CCS) and 192 in other areas of the hospital (under the purchase order issued directly to us – we should not exceed that purchase order based on current schedule)". AD was directed to remove air scrubbers on January 13, 2006. AD responded on January 14, 2006 that "air scrubbers have been shut down per your direction".

I find that there was an express contract/purchase order for the air scrubber work performed on floors 1 through 10 for the amount of 750, 000.00. AD was aware of this purchase order and the amount. I further find that no person, with contract authority to bind the government, ever modified this contract/purchase order to increase the amount authorized. According to Maria Pizarro this Purchase Order was mailed to AD. This purchase order specifically indicated that the contractor could "not exceed the estimated amount on this purchase order without written approval from the Contracting Officer". The Purchase Order also indicated that the "Government will not be obligated for work performed that exceeds the amount on the face of this PO". Furthermore AD was specifically told by both the Resident Engineer and the COTR that they were not authorized to exceed the purchase order amount. Despite the fact that AD was specifically instructed to notify the VA when they reached 80% of the amount of the PO, they failed to do so. Rather, on December 8, 2005, AD indicated that they would not exceed the estimated amount of this Purchase Order.

Therefore, I find that AD was not authorized to perform any work under this Purchase Order in excess of $750,000.00. Therefore of the $1,819,573.46 claimed by AD under PO 586-C60204, I find that AD is due a total of $750,000.00.

**Tree and vegetation removal** - PO 586-C60216

I have carefully reviewed the facts and circumstances surrounding the removal and disposal of all trees, shrubs, vegetation and removal/replacement of topsoil at the VAMC New Orleans in the aftermath of Hurricane Katrina. In addition, the OIG has audited this claim. I have carefully considered these results.

There was an express contract governing this work. Since there was an express contract/purchase order governing this work, I find that there was no implied-in-fact contract for this work.

On November 11, 2005, Maria Pizarro issued PO 586-C60216 which states it is an estimated order in the amount of $75,000. AD's original invoice, invoice 31306, was dated September 15, 2006, and was for the amount of $74,921.55 for services to remove trees and vegetation. The invoice was accompanied by a cover letter that stated that AD would be submitting "a Claim for services rendered in excess of the ceiling for this Purchase Order". Subsequently AD submitted an additional claim for this work in the amount of $13,583.00.

I find that there was an express contract/purchase order for this work for the amount of 75,000.00. AD was aware of this purchase order amount and was aware that this was a "ceiling" price. I further find that no person with contract authority ever modified this contract/purchase order to increase the amount authorized. According to Maria Pizarro this Purchase Order was mailed to AD. The Purchase Order clearly states that it is an estimated order and vendor cannot exceed the amount on this PO without prior approval from the Contracting Officer. Furthermore, AD was specifically told by both the Resident Engineer and the COTR that they were not authorized to exceed this amount. Despite the fact that AD was specifically instructed to notify the VA when they reached 80% of the amount of the P.O., they failed to do so. I find that AD was not authorized to perform any work in excess of $75,000.00. Therefore I find that a balance of $75,000.00 is due AD on the purchase order 586-C60216.

**Power wash floor surfaces of parking garage** - PO 586-C60218

I have carefully reviewed the facts and circumstances surrounding the power washing of floor surfaces of the parking garage at the VAMC New Orleans in the aftermath of Hurricane Katrina. In addition, the OIG has audited this claim. I have carefully considered these results.

There was an express contract governing this work. Since there was an express contract/purchase order governing this work, I find that there was no implied-in-fact contract for this work.

On November 11, 2005 at 12:51pm AD provided an estimate for sweeping floor in the amount of $85,000 including $11,000 for contingencies. AD had eluded that power washing the garage would not be significantly higher. Then at 6:50pm, AD sent an email providing an estimate to pressure wash in lieu of hand sweeping. The quotes notes a book price $154,839.00, but the e-mail states that AD can complete the job at one half the book price of $75,000 plus $10,000 for unforeseen circumstances.

On November 11,, 2005, Maria Pizarro issued PO 586-C60218 to power wash the floor surfaces of the Parking Garage at VAMC New Orleans. The amount stated on the Purchase Order was $85,000.00. This Purchase Order clearly stated "this is an estimated purchase order and contractor is not to exceed amount on this PO without prior approval from the Contracting Officer". AD's original invoice, invoice 31006, was dated March 10, 2006, and was for the amount of $84,704.91. Subsequently AD submitted an additional claim in the amount of $34,406.14.

The Purchase Order scope of work clearly states that the contractor is required to power wash the parking garage. AD's rebuttal states that they received a verbal purchase order in the amount of $85,000 but were not given details as to the tasks included. Contracting Officer Pizarro, however, indicates that copies of all purchase orders were mailed to AD. Furthermore AD should have written the contracting officer asking for clarification if they were unsure of the work required.

AD states that they proceeded with work, and then determined that the condition of the garage required sweeping prior to power washing. This statement shows that AD understood that this Purchase Order did not involve sweeping when issued. On the other hand, this statement does not show that AD is entitled to compensation for this work. The condition of the garage was visible during the site visit. If sweeping was a necessity AD should have insisted upon inclusion of this work this in their quote. Furthermore, if this "necessity of sweeping" was somehow not apparent until after the PO was issued, AD should have requested a modification to the purchase order.

It is clear that the Purchase Order did not include sweeping. AD stated and provided a written quote stating that pressure washing could be accomplished for the $85,000 ($75,000.00 plus and addition $10,000.00 for unforeseen circumstances). No agreement was ever reached for sweeping the garage, and no one with contracting authority ever authorized the contractor to perform sweeping services. Therefore, the cost claimed for sweeping in the amount of $61,421.23 (19,158.13 + 42,263.10) plus overhead and profit totaling $73,705.47 less the 50% discount for a final total of $36,852.74 is denied.

Therefore, I find that AD is due $82,258.31 for power washing the floor surfaces of the Parking Garage at VAMC New Orleans

**Summary**

AD is claiming a total $172,180.57 under P.O. 586-C60194 for power washing of exterior stained surfaces and removal of damaged trees and shrubs. Payment in the amount of $74,250.00 was made on June 13, 2006. I find that AD was not authorized to perform any work under this Purchase Order in excess of $750,000.00. Therefore, I find that AD is still due a total of $750.00 under P.O. 586-C60194.

AD is claiming $1,385,499.32 for the final cleaning of floors 1 through 10 under PO 586-C60195. For the reasons stated in this decision, I deny $44,595.94 of this claim. I find that AD is due a total amount of 1,340,903.38 under PO 586-C60195

AD is claiming $1,819,566.29 for HEPA air scrubbers on floors 1 through 10 under PO 586-C60204. I find that AD was not authorized to perform any work under this Purchase Order in excess of $750,000.00. Therefore, under PO 586-C60204, I find that AD is due a total of $750,000.00.

AD is claiming $88,504.55 for tree and vegetation removal under PO 589-C60216. I find that AD was not authorized to perform any work in excess of $75,000.00. Therefore I find that a total amount of $75,000.00 is due AD on Purchase Order 586-C60216

AD is claiming $ 119,111.05 for sweeping and power washing floor surfaces of the parking garage. AD was only authorized to power wash the parking garage because the Purchase Order did not include sweeping. Therefore, I find that AD is due the amount of $82,258.31 under PO 586-C60218.

Therefore I find that AD is currently due a combined total of $2,248,911.69 for work performed under Purchase orders 586-C60194, 586-C60195, 586-C60204, 586-C60216, and 586-C60218.

This is the final decision of the Contracting Officer. This decision was issued in compliance with the Order of the United States Court of Federal Claims dated January 3, 2008. However these matters are still in litigation. Therefore, no payments will be made pursuant to this final decision except as specifically ordered by the United States Court of Federal Claims.

Brenda Stewart
Contracting Officer